UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANGIE S. WILLIAMS,

    Plaintiff,

vs.                                                         Case No. 8:11-cv-462-MCR

MICHAEL ASTRUE, Commissioner of the
Social Security Administration,

    Defendant.
_____/

**MEMORANDUM AND ORDER**[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED**.

**I.    PROCEDURAL HISTORY**

Plaintiff filed applications for a period of disability and Disability Insurance Benefits ("DIB") on May 9, 2006, as well as an application for Supplemental Security Income ("SSI") on July 13, 2006. Plaintiff alleged an onset date of June 14, 2000. (Tr. 115-28). The claims were denied administratively and Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). On June 9, 2009, a hearing was held before the Honorable Peter C. Edison. (Tr. 10-33). On September 14, 2009, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 41-48). The Appeals Council

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 13).

denied Plaintiff's request for review. (Tr. 1-4). Having exhausted all administrative remedies, Plaintiff filed her timely Complaint on March 4, 2011 (Doc. 1), seeking judicial review of the ALJ's final decision.

## II. NATURE OF DISABILITY CLAIM

### A. Basis of Claimed Disability

Plaintiff claimed to be disabled since June 14, 2000 as a result of: arthritic knees, degenerative changes in the cervical and lumbar spine, and depression. (Tr. 16-23).

### B. Summary of Applicable Evidence Before ALJ

Plaintiff was 47 years of age at the time the ALJ conducted the May 12, 2009 administrative hearing. (Tr. 13). Plaintiff had completed high school and three and a half years of college. (Tr. 13). Plaintiff had past relevant work experience as a corrections officer. (Tr. 28). Plaintiff claimed to be disabled since June 14, 2000 as a result of: arthritic knees, degenerative changes in the cervical and lumbar spine, and depression. (Tr. 16-23).

As this appeal deals only with the ALJ's assessment of Plaintiff's mental impairments, the Court will limit its discussion to only the medical evidence regarding Plaintiff's mental impairments. On October 11, 2004, Plaintiff was referred to Kirti Pandya, M.D. for a psychiatric evaluation.[2] (Tr. 332). In the initial evaluation, Dr. Pandya diagnosed Plaintiff with, among other things, depressive disorder, multiple stressors, and assigned Plaintiff a Global Assessment of Functioning Score ("GAF") of

---

[2] Dr. Pandya stated in his evaluation that he evaluated Plaintiff back on November 20, 2002 (Tr. 332), however those records were not attached to the record or referenced further.

55-60.[3] (Tr. 335). Dr. Pandya concluded Plaintiff did not have any psychiatric work restrictions. (Tr. 336). Dr. Pandya further opined Plaintiff suffered from problems related to pre-existing personality symptoms which would be persistent until the disability case was resolved due to Plaintiff's significant secondary gain. (Tr. 336).

Plaintiff continued to receive treatment from Dr. Pandya through May 2005. (Tr. 337-43). In the final followup visit on May 5, 2005, Dr. Pandya again noted his inability to assess whether Plaintiff's problems were from a true depressive disorder or from secondary financial gain. (Tr. 339). In Dr. Pandya's final assessment, he concluded, "I would . . . place [Plaintiff] . . . with a permanent impairment rating of 5%. I [did] not believe that [Plaintiff] [had] any impairment due to any psychiatric disorder . . ." (Tr. 339).

Plaintiff next received a psychiatric evaluation from Kathleen Carroll, M.D. on March 1, 2006. (Tr. 188-190). Dr. Carroll assessed Plaintiff and determined Plaintiff's memory, concentration, insight, and judgment were "fair." (Tr. 189). On June 26, 2006, Dr. Carroll completed a "Treating Source Mental Health Report." (Tr. 307-08). The majority of the report is illegible, as noted by both Plaintiff and the Commissioner in their briefs. (Doc. 20 at 7-8; Doc. 21 at 9). In one of the few legible portions of Dr. Carroll's report, she concluded Plaintiff was not "capable of sustaining work activity for eight hours a day, five days a week." (Tr. 308).

---

[3] The GAF Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) at 34 (4th ed. 1994). A GAF of 51-60 indicates Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). Id. .

On August 23, 2006, James G. Brown, Ph.D. completed a Mental Residual Functional Capacity Assessment ("MRFC"). (Tr. 310-14). In the MRFC, Dr. Brown answered twenty questions and found Plaintiff to be moderately limited in the ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, and travel in unfamiliar places or take public transportation. (Tr. 310-11). Dr. Brown further concluded "[n]o severe deficits in adaptive functioning based on mental health factors [were] documented." (Tr. 312).

Dr. Brown also completed a Psychiatric Review Technique ("PRT") Form on August 23, 2006. (Tr. 314-27). Dr. Brown based his responses and conclusions upon Plaintiff's medical history of record, including Dr. Carroll's illegible report. (Tr. 326). Dr. Brown determined that based on 20 C.F.R. Part 404, Appendix 1, Listing 12.00(C), Plaintiff had moderate limitations in maintaining social functioning and maintaining concentration, persistence, or pace. (Tr. 324). Furthermore, Dr. Brown surmised, "the preponderance of the evidence indicate[d] [there was] no severe mental impediment to employment." (Tr. 326).

Plaintiff next presented to Robert G. Moering, Psy.D. for a consultative examination on May 24, 2007. Dr. Moering evaluated Plaintiff and diagnosed her with "Major depressive disorder, Recurrent Moderate" and "Panic Disorder without Agoraphobia versus Anxiety Disorder." (Tr. 518). Dr. Moering also concluded there

was a discrepancy between Plaintiff's reported medical history and the medical history reported by Dr. Carroll. (Tr. 518). Further, Dr. Moering opined "Plaintiff was not completely honest" and was "exaggerating her symptoms some." (Tr. 518).

On June 11, 2007, Danna Dennard, a medical consultant, completed a PRT and an MRFC. (Tr. 529-45). In the PRT, Ms. Dennard determined Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 539). In the MRFC, Ms. Dennard concluded Plaintiff was moderately limited in the ability to: maintain attention and concentration for extended periods and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods. (Tr. 543-44). Ms. Dennard concluded Plaintiff's "[c]omprehension [and] memory appear[ed] to be adequate for simple tasks[,] [Plaintiff] [c]ould comprehend simple [and] complex instructions . . ." (Tr. 545). Additionally, Ms. Dennard determined Plaintiff's "[a]ttention [and] [c]oncentration [were] mild to moderately compromised. [Plaintiff] [had] the capacity to . . . fulfill obligations in a work setting most of the time. Some lapses in [attention and concentration] [were] likely to occur from time to time." Id. Finally, Ms. Dennard determined Plaintiff's "[p]ace [and] persistence [were] adequate for employment if physically capable." Id.

On January 29, 2008, Plaintiff was evaluated by Bharminder S. Bedi, M.D. (Tr. 755-56). Dr. Bedi determined Plaintiff was "not delusional, psychotic or suicidal. [Plaintiff's] eye contact [was] good[,] [her] [s]peech [was] normal, [t]hought processes [were] clear[,] [and] [her] [m]emory [was] intact." (Tr. 756). According to Dr. Bedi's evaluation, he diagnosed Plaintiff with "bipolar disorder" and assigned Plaintiff a GAF

score of 55-60. (Tr. 755). Further, Dr. Bedi concluded "[Plaintiff] [was] unable to work." Id. Dr. Bedi prescribed Plaintiff various medications and requested she return for a reassessment in three weeks. (Tr. 757). During a follow-up visit on July 25, 2008, Dr. Bedi remarked "from psych point of view, [Plaintiff] [was] doing OK . . . she is not as depressed or discouraged." (Tr. 750). Furthermore, on July 25, 2008, Dr. Bedi noted "[Plaintiff] [wanted] to do some business out [of] her home, maybe selling stuff on E-bay." Id. Following a reassessment visit on October 3, 2008, Dr. Bedi observed improvement in Plaintiff and raised her GAF score to 60-62.[4] Plaintiff continued to receive treatment from Dr. Bedi on a monthly basis through March 27, 2009. (Tr. 653-54, 742-57).

## C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a plaintiff is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a plaintiff does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment

---

[4] A GAF of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) at 34 (4th ed. 1994).

and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a plaintiff's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a plaintiff's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a plaintiff's impairments (considering her Residual Functioning Capacity ("RFC"), age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In this case, the ALJ determined Plaintiff met the nondisability requirements of the Act and was insured for benefits through September 30, 2006. (Tr. 43). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 14, 2000. Id. At step two, the ALJ found Plaintiff had the following severe impairments: arthritic knees, degenerative changes in the cervical and lumbar spine, and depression. Id. At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

The ALJ further determined Plaintiff had the RFC to perform "light" work as defined in 20 C.F.R. §§404.1567(b) and 416.967(b). (Tr. 44). Specifically, the ALJ found Plaintiff was able to " perform 'light' work . . . except that she need[ed] the option to alternate sitting with standing as needed and no high stress such as from emergency situations or production numbers." Id. In making that determination, the ALJ found Plaintiff's impairments could reasonably be expected to produce the alleged symptoms.

Page 7

(Tr. 45). However, he found Plaintiff's statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not credible to the extent they were inconsistent with the RFC assessment. Id.

At step four, the ALJ utilized the testimony of a Vocational Expert ("VE") during the hearing to determine if Plaintiff could perform any of her past relevant work. (Tr. 28, 47). The VE determined Plaintiff's only past relevant work was as a corrections officer and that she was no longer able to perform that work. (Tr. 28). Accordingly, the ALJ proceeded to step five and asked the VE whether Plaintiff could perform other work existing in the national economy. Id. The VE testified Plaintiff could perform occupations such as customer security clerk and cashier II. (Tr. 28-29). Therefore, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 47-48).

## III.  ANALYSIS

### A.  The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672

F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (explaining how the court must scrutinize the entire record to determine reasonableness of factual findings).

The district court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine the Commissioner properly applied the law. Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994).

### B. Issues on Appeal

As the Commissioner points out in his brief (Doc. 21 at 5), Plaintiff's memorandum is not a model of clarity and this Court is not entirely certain what Plaintiff contends are the ALJ's errors. The memorandum includes disjointed ramblings and citations to case law which are never related to the case at bar.[5] In any event, the Court

---

[5] This Court will not consider issues not fully briefed or argued by Plaintiff. Further, Plaintiff has waived all other "potential issues" which are not supported by legal argument. See Friedmann v. Astrue, 3:08-CV-562-J-MCR, 2009 WL 2499012 (M.D. Fla. Aug. 14, 2009) (citing Outlaw v. Barnhart, 197 F.App'x. 825, 828 n. 3 (11th Cir. 2006) (plaintiff waived issue regarding physical exertional impairments despite listing issue in brief where plaintiff "did not elaborate on

believes Plaintiff is arguing that the ALJ erred in failing to include his findings of moderate limitations in concentration, persistence, and pace in the hypothetical presented to the VE.  Additionally, Plaintiff appears to argue the ALJ erred by failing to properly consider the evidence and/or fully and fairly develop the record.  (Doc. 20 at 2, 6-8).  In response, the Commissioner contends the ALJ's decision of not disabled is supported by substantial evidence.  (Doc 21 at 4).  Specifically, the Commissioner takes the position the ALJ considered all of the relevant medial evidence and accounted for all of Plaintiff's restrictions and limitations in his RFC and hypothetical to the VE.  (Doc. 21 at 4-13).  Furthermore, the Commissioner argues the ALJ properly considered and weighed the medical evidence of record.  (Doc. 21 at 8).

> **i. Whether the ALJ erred by not properly including moderate limitations in concentration, persistence, and pace in the hypothetical presented to the VE .**

Plaintiff argues the ALJ erred by posing an incomplete hypothetical to the VE. (Doc. 20 at 2, 6-7).  Specifically, Plaintiff contends the hypothetical was deficient because the ALJ's limitation of "no high stress" failed to adequately account for Plaintiff's moderate difficulties in concentration, persistence, and pace.  (Doc. 20 at 6-7).

At step five of the process of evaluating a claim of disability, the burden shifts to the Commissioner to prove that other jobs exist in the national economy that the plaintiff can perform.  Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996).  "The ALJ must articulate specific jobs that the [plaintiff] is able to perform, and this finding must be

---

this claim or provide adequate authority about this claim")); Rowe v. Schreiber, 139 F.3d, 1381, 1382 n. 1 (11th Cir. 1998) (holding in the absence of an argument, an issue is deemed abandoned); Callahan v. Barnhart, 186 F. Supp. 2d 1219, 1230 n. 5 (M.D. Fla. 2002) (noting an issue raised only in heading of a brief without any further elaboration or factual support is deemed waived).

supported by substantial evidence, not mere intuition or conjecture." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). One way the ALJ can determine whether the plaintiff is able to perform other work is for the ALJ to pose hypothetical questions to the VE, "to establish whether someone with the limitations that the ALJ has previously determined that the [plaintiff] has, will be able to secure employment in the national economy." Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2003). "In order for a [VE's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the [plaintiff's] impairments." Winschel v. Commissioner of Social Sec., 631 F.3d 1176, 1180 (11th Cir. 2011).

In this case, the ALJ presented three hypothetical questions to the VE. In the first hypothetical, the ALJ asked, "[i]f I should find the [plaintiff] retains a [RFC] to perform a full range of light work, would there be any jobs a person of [Plaintiff]'s age, education and past work could be expected to be able to perform?" (Tr. 28). In the second hypothetical the ALJ stated, "[n]ow if I should find her [RFC] is limited to light work which affords a sit/stand option what impact would that have . . . ?" (Tr. 29). In the third and final hypothetical, the ALJ inquired, "[i]f I should further find that the [plaintiff] cannot perform jobs which are considered to be high stress would that impact her ability . . . to perform jobs?" (Tr. 30).

It is well settled in the Eleventh Circuit as well as other circuits that a hypothetical to a VE sufficiently accounts for limitations in concentration, persistence, and pace when these limitations are either implicitly or explicitly accounted for. Jarrett v. Commissioner of Social Sec., 422 F.App'x. 869, 872 (11th Cir. 2011); see also White v. Commissioner of Social Sec., 572 F.3d 272, 288 (6th Cir. 2009) (concluding the ALJ's

reference to a moderate limitation in maintaining "attention and concentration" adequately represented the plaintiff's limitations in concentration, persistence, and pace). Furthermore, when medical evidence demonstrates a plaintiff can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded a hypothetical which includes a limitation of "only unskilled work" sufficiently accounts for such limitations. Winschel 632 F.3d at 1181 (citing Simila v. Astrue, 573 F.3d 503, 521–22 (7th Cir.2009)).

Here, the ALJ agreed with the medical opinions of Plaintiff's treating physician, the consultative physicians, and the non-examining state physicians that Plaintiff had moderate limitations in maintaining concentration, persistence, or pace. (Tr. 46). However, in the hypothetical posed to the VE, the ALJ failed to list any limitations sufficiently accounting for these limitations. Furthermore, the ALJ did not explicitly or implicitly account for the limitations nor did he reference medical evidence to support his conclusion that Plaintiff could engage in work that was not high stress despite her limitations in maintaining concentration, persistence, or pace.

Since the hypothetical posed to the VE in this case did not comprise all of Plaintiff's impairments; specifically, her moderate limitations in concentration, persistence, or pace, the ALJ's decision is not supported by substantial evidence and remand is necessary.

### ii. Whether the ALJ failed to properly consider the evidence and/or to fully and fairly develop the record.

Plaintiff also argues the ALJ failed to properly consider the evidence regarding her mental limitations. (Doc. 20 at 2, 8). Specifically, Plaintiff claims the ALJ failed to consider the findings of Ms. Dennard, Dr. Brown, and Dr. Carroll. (Doc. 20 at 7-8). In response, the Commissioner argues the ALJ thoroughly reviewed the evidence regarding Plaintiff's mental limitations and all of the evidence of record. (Doc. 21 at 8).

In every case, the ALJ is required to consider all of the evidence in the claimant's record when making a disability determination. See 20 C.F.R §§404.1520(a). In addition, the ALJ must state the weight afforded to the evidence considered. Ryan v. Heckler, 762 F.2d 939,941(11th Cir. 1985). Specifically, the ALJ must state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence. Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). Indeed, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Cowart, 662 F.2d at 735 (quoting Stawls v. Califano, 596 F.2d 1209, 1213 (4th Cir. 1979)) (internal quotation marks omitted)). Although the ALJ is required to consider all of the evidence, he is not required to discuss all of the evidence presented, but rather must explain why "significant probative evidence has been rejected." Vincent v. Heckler, 739 F.2d 1393,

1394-95 (9th Cir. 1984).

In the instant case, the ALJ referenced the opinions of Ms. Dennard, Dr. Brown, and Dr. Carroll, however, he did not articulate the weight afforded to those opinions. As the Court is remanding the matter for the ALJ to pose a complete hypothetical question to the VE, the Court will ask the ALJ to reconsider these opinions and if he decides to reject any, to clearly articulate his reasons for doing so.

The Plaintiff also argues the ALJ failed to fully and fairly develop the record. (Doc. 20 at 2, 6-8). Specifically, Plaintiff claims the ALJ should have asked for further clarification of Dr. Carroll's illegible findings from her June 2006 questionnaire. (Doc. 20 at 7-8). The Commissioner argues the questionnaire should not be considered because the overly-restrictive assessment that Plaintiff was unable to work is a finding reserved for the Commissioner. (Doc. 21 at 9).

An ALJ has a duty to fully and fairly develop the record. See Cosby v. Astrue, 2:11-cv-264-FtM-SPC, 2012 WL 717860 (M.D. Fla. Mar. 6, 2012) (citing Cowart, 662 F.2d at 735). As Plaintiff points out, 20 CFR §404.1512(e) authorizes the ALJ to request clarification from a medical source when information is inadequate to make a determination of disability. The regulation further states that additional evidence or clarification from a medical source will not be sought when it is known from past experience the source either cannot or will not provide the necessary findings. See 20 CFR §404.1512(e)(2).

In the instant case, the Court is not convinced there was inadequate information for the ALJ to make a disability determination. However, as remand is necessary in this case, this Court directs the ALJ to determine if any parts of the record require further

development, and develop as necessary.

## IV. CONCLUSION

For the reasons stated herein, the Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** the matter to the ALJ with instructions to (1) pose a hypothetical question to the VE which specifically accounts for Plaintiff's moderate limitations in maintaining concentration, persistence, and pace; (2) articulate specific and adequate reasons for rejecting any significant probative evidence; (3) determine if any parts of the record require further development; and (4) conduct any further proceedings deemed necessary in light of any new findings. The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration. **This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act**.

**DONE AND ORDERED** at Jacksonville, Florida, this __4th__ day of May, 2012.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record